# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3052

_____

Frederick Lee Revels,                    *
                                         *
            Petitioner - Appellant,      *
                                         *    Appeal from the United States
      v.                                 *    District Court for the Western
                                         *    District of Missouri.
Mary Sanders,                            *
                                         *
            Respondent - Appellee.       *

_____

Submitted: November 15, 2007
    Filed: March 10, 2008

_____

Before MELLOY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Petitioner Frederick Lee Revels, an insanity acquittee, appeals from the district court's order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Revels challenges the Missouri Court of Appeals's denial of his application for unconditional release. Because we conclude that the court violated Revels's due process rights by imposing on him an evidentiary burden contrary to Supreme Court precedent, we reverse the judgment of the district court and grant a conditional writ of habeas corpus.

I.

Revels is involuntarily committed as a psychiatric patient at the Northwest Missouri Psychiatric Rehabilitation Center ("NMPRC") in St. Joseph, Missouri. On June 22, 1988, Revels killed three members of his family; at that time, Revels was hearing voices and abusing a controlled substance. On July 22, 1988, a grand jury indicted Revels on two counts of first-degree murder, one count of second-degree murder, and three counts of armed criminal action. On August 27, 1992, Revels entered a plea of not guilty by reason of insanity on all counts in the Circuit Court of Jackson County, Missouri. The circuit court accepted Revels's plea, found him not guilty by reason of mental disease or defect excluding responsibility,[1] and committed him to the care and custody of the Missouri Department of Mental Health.[2]

In 1993, Revels applied to the Jackson County Circuit Court for a conditional release.[3] Pursuant to Missouri law, Revels, as the party who sought the conditional

---

[1]"A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." Mo. Rev. Stat. § 552.030(1).

[2]"When an accused is tried and acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person committed to the director of the department of mental health for custody." Id. § 552.040.2.

[3]An insanity acquittee or "the head of the facility where the person is committed may file an application in the court [that committed the person] for a hearing to determine whether the committed person shall be released conditionally." Id. § 552.040.10. "The application shall specify the conditions and duration of the proposed release." Id. § 552.040.10(3). While on conditional release, one must abide by the conditions specified in his application, id., and the Missouri Department of Health is able to monitor compliance with such conditions through "reviews and visits with the client at least monthly, or more frequently as set out in the release plan" as well as ensure that the acquittee "is receiving care, treatment, habilitation or

release, bore the burden of proving, by clear and convincing evidence, that he was "not likely to be dangerous to others while on conditional release." Mo. Rev. Stat. § 552.040.12(6). In addition, because Revels's insanity acquittal was based, in part, on the crime of first-degree murder, he was ineligible for conditional or unconditional release absent a finding by the court that:

> (1) [Revels] is not now and is not likely in the reasonable future to commit another violent crime against another person because of [Revels's] mental illness; and (2) [Revels] is aware of the nature of the violent crime committed against another person and presently possesses the capacity to appreciate the criminality of the violent crime against another person and the capacity to conform [Revels's] conduct to the requirements of law in the future.

Id. § 552.040.20. Finally, in considering an application for either conditional or unconditional release, Missouri law requires that the court consider a six-part test for weighing the impact of the applicant's release on public safety.[4]

---

rehabilitation consistent with his needs, condition and public safety." Id. § 552.040.16. Further, conditional release may be revoked in the event that the director of the department of mental health "has reasonable cause to believe that the person has violated the conditions of such release," id. § 552.040.17, and, "[a]t any time during the period of a conditional release or trial release, the court which ordered the release may issue a notice to the released person to appear to answer a charge of a violation of the terms of the release and the court may issue a warrant of arrest for the violation." Id. § 552.040.18.

[4]The six-part statutory test addresses the following:

> (1) The nature of the offense for which the committed person was committed; (2) The person's behavior while confined in a mental health facility; (3) The elapsed time between the hearing and the last reported unlawful or dangerous act; (4) The nature of the person's proposed release plan; (5) The presence or absence in the community of family or others willing to take responsibility to help the defendant adhere to the

The circuit court granted Revels's application for conditional release; however, it was revoked in 1994 when he missed appointments, broke a window, and tested positive for a prescribed painkiller which he was no longer authorized to use. Sometime in 1995, Revels received a second conditional release, which was revoked on March 1, 1997, partly because he failed to attend Alcoholics Anonymous and Narcotics Anonymous meetings as required by the terms of his conditional release.

On October 31, 1997, Revels, for the first time, applied to the Jackson County Circuit Court for an unconditional release. In order to obtain an unconditional release, Missouri law requires that Revels show, by clear and convincing evidence, that he "does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering [him] dangerous to the safety of himself or others." Mo. Rev. Stat. §§ 552.040.7(6), .9. In addition, based on the nature of the offense for which Revels was acquitted, the court had to find that:

> (1) [Revels] is not now and is not likely in the reasonable future to commit another violent crime against another person because of [Revels's] mental illness; and (2) [Revels] is aware of the nature of the violent crime committed against another person and presently possesses the capacity to appreciate the criminality of the violent crime against another person and the capacity to conform [Revels's] conduct to the requirements of law in the future.

Id. § 552.040.20. The circuit court denied Revels's application, and its decision was affirmed by the Missouri Supreme Court, State v. Revels, 13 S.W.3d 293 (Mo. 2000) (en banc).

---

> conditions of the release; and (6) Whether the person has had previous conditional releases without incident.

Id. § 552.040.12.

-4-

On June 19, 2003, Revels again applied to the Jackson County Circuit Court for unconditional release, which the Missouri Department of Health opposed. Revels also challenged the constitutionality of Chapter 552 of the Revised Statutes of the State of Missouri with regard to release. The circuit court conducted a hearing on the matter on June 20, 2003. The evidence at the hearing consisted of Revels's medical records and the testimony of two psychiatrists, Dr. A. E. Daniel and Dr. James Bradley Reynolds, the Medical Director of NMPRC. Dr. Daniel, who had met with Revels several times beginning in 2000, testified that Revels had been diagnosed with (1) a substance-induced psychotic disorder in remission and (2) poly-substance dependence in full remission. Dr. Reynolds, who was the supervisor of individuals working directly with Revels and had examined Revels, did not disagree with Dr. Daniel's testimony with regard to Revels's diagnoses; however, Dr. Reynolds stated that a mental condition in remission is one that still exists and may become a problem again.

With regard to Revels's then current mental condition, the February 13, 2003 medical and psychiatric assessment performed by Dr. Arnaldo Berges, provided that: (1) "there are no reports of [Revels exhibiting] active psychotic symptoms since mid-1992" and (2) Revels's "active symptoms of psychosis seem[] to be in full remission at this time which indicates no acute need for antipsychotic treatment." Dr. Daniel stated that Revels showed no present symptoms of any mental disorder. Dr. Reynolds agreed that Revels displayed no signs of a present mental disorder. While Dr. Daniel opined that the unconditional release should be granted, Dr. Reynolds observed that he could not state that Revels was not likely to be dangerous due to: (1) Revels's prior unsuccessful conditional releases; (2) Revels's likely relapse and use of illegal drugs; and (3) the fact that Revels, who has a history of drug-induced delusions, was more likely to have such delusions in the event of subsequent drug use than someone without a history of delusions.

The Jackson County Circuit Court accepted the accuracy of both psychiatrists' testimony, except that the court found Dr. Reynolds's testimony more credible than

Dr. Daniel's as to Revels's dangerousness and the likelihood that Revels would relapse. On June 21, 2004, the circuit court denied Revels's application for unconditional release because (1) Revels has a mental disease which is in remission and (2) Revels had not carried his burden under Missouri law to show, by clear and convincing evidence, that he was not likely to be dangerous to himself or others if released because Dr. Reynolds could not state to a reasonable degree of certainty that Revels would not be dangerous. With regard to the statutory "safety" factors, the circuit court found the following: (1) Revels committed three murders (factor one); (2) Revels's recent behavior in the Department of Mental Health was acceptable (factor two); (3) Revels's last dangerous act was during his first conditional release when he, out of anger, broke a window with his hand (factor 3); and (6) Revels had failed to complete two conditional releases (factor 6). The court concluded that the factors did not warrant Revels's unconditional release. The court also held that Revels's constitutional challenge to Chapter 552 of the Revised Statutes of the State of Missouri failed. The Missouri Court of Appeals summarily upheld the denial of release on August 16, 2005. State v. Revels, 172 S.W.3d 461 (Mo. Ct. App. 2005) (per curiam).

The Missouri Court of Appeals issued a memorandum supplementing order articulating its reasoning for the denial. State v. Revels, Memorandum Supplementing Order, Aug. 16, 2005 (Mo. Ct. App. 2005) (unpublished). The court of appeals found that the record supported the trial court's finding that Revels had failed to show, by clear and convincing evidence, that he did not then have a present mental disease or defect and that he was not then potentially dangerous to himself and others, with the court noting specifically that the danger was "due to his drug and alcohol dependence and prior abuse of drugs and alcohol." Id. at 4. With regard to Revels's claim that he was entitled to unconditional release because (1) both psychiatrists agreed that he currently showed no signs of mental disability and (2) as a result, his future dangerousness was irrelevant, the court of appeals stated that "it [is] not enough to prove present absence from mental defect, but the person seeking unconditional

-6-

release must show that he is not likely to suffer from a mental disease or defect in the reasonable future, and also establish by clear and convincing evidence the mandate of Section 552.040 that he will not be a danger to himself or others." Id. at 3 (citing State v. Gratts, 112 S.W.3d 12, 19 (Mo. Ct. App. 2003).

The court of appeals also rejected Revels's contention that he was entitled to release because he passed the six-part statutory "safety" test, finding specifically that (1) "the offense for which he was committed was egregious having killed three family members" (factor one); (2) "Revels also exhibited aggressive behavior while confined (verbally lashing out at a department case manager and using profanity)" (factor three); and (3) "he has failed two conditional releases" (factor six). Id. at 4. Thus, the Missouri Court of Appeals denied all of Revels's claims. Id. Revels's application for transfer to the Missouri Supreme Court was denied on October 4, 2005. Revels, 172 S.W.3d at 461.

On November 15, 2005, Revels filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Missouri. In his petition, Revels asserted that: (1) he should be released from confinement because he no longer suffered from a mental disorder, had not done so since 1992, and had not required anti-psychotic medication since 1997; (2) on April 23, 2005, Dr. Reynolds assessed Revels to be recovered and not likely spontaneously to suffer a psychotic disorder in the absence of drug use;[5] and (3) the dictates of Missouri law as to what an insanity acquittee must show in order to obtain release violate the due process standard set forth by the United States Supreme Court in Foucha v. Louisiana, 504 U.S. 71 (1992). The respondent Mary Sanders, the Chief Operating Officer of NMPRC and Revels's custodian, contended that Revels's petition was untimely filed

---

[5]We reject Revels's attempt to rely on a psychiatric assessment which was not before the circuit court at the time that it denied his application for unconditional release. Von Kahl v. United States, 242 F.3d 783, 788 (2001) (stating that generally "the appellate record is limited to the record made below").

under 28 U.S.C. § 2244(d)(1) because more than a year passed between the date that petitioner's judgment became final, August 27, 1992, and the date he filed his federal petition, November 15, 2005.

The district court, assuming without deciding that Revels's petition was timely as from the Jackson County Circuit Court's June 21, 2004 denial of Revels's 2003 application for unconditional release, "conclude[d] that the decisions of the state courts that petitioner should not be unconditionally released . . . were not unreasonable applications of federal law . . . or based on an unreasonable determination of the facts of petitioner's case." Revels v. Sanders, No.05-1140-CV-W-NKL-P (W. D. Mo. May 23, 2006) (unpublished). Accordingly, the district court dismissed Revels's petition for a writ of habeas corpus with prejudice.

This court granted a certificate of appealability as to Revels's

> claim [that] his due process rights [were] violated when his June 2003 amended application for release from confinement was denied; more specifically, whether the Missouri Court of Appeals' conclusion that Revels was required to show he 'currently does not suffer from mental illness and was not likely to have a mental disease or defect in the reasonable future and that he . . . no long . . . poses a danger to society,' State v. Revels, WD64433, at 3 (MO Ct. App. Aug. 16, 2005), is reasonably wrong in light of the Supreme Court's decision in Foucha v. Louisiana, 504 U.S. 71 (1992).

Revels v. Sanders, No. 06-3052 (8th Cir. March 28, 2007) (unpublished) (internal quotations omitted).

## II.

"We review for clear error the district court's factual findings and review de novo its legal conclusions." Bell-Bey v. Roper, 499 F.3d 752, 755 (8th Cir. 2007), pet. for cert. filed (U.S. Jan. 17, 2008) (No. 07-8894). Our review of this appeal is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) which "limits the availability of habeas relief." Id. Accordingly, we may not grant Revels habeas relief "unless [the Missouri Court of Appeals's] adjudication of [Revels's] claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). Because the certificate of appealability refers only to section 2254(d)(1), the "unreasonable application" prong, we limit our review of Revels's habeas petition to that provision. See 28 U.S.C. § 2253(c)(3) (on habeas review, a federal court of appeals considers only the "specific issue or issues" listed in the certificate of appealability); see also Scott v. United States, 473 F.3d 1262, 1263 (8th Cir.), cert. denied, 127 S. Ct. 2443 (2007) ("Our 'appellate review is limited to the issues specified in the certificate of appealability.'") (quoting Carter v. Hopkins, 151 F.3d 872, 874 (8th Cir. 1998)).

The Supreme Court has identified two ways in which a state court decision may meet the requirements imposed by the "unreasonable application" prong of section 2254(d)(1). This court may grant the writ if the state court: (1) "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) "confront[ed] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive[d] at a result different from our precedent." Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see Bell-Bey v. Roper, 499 F.3d at 756. "Avoiding these pitfalls does not require citation of [Supreme Court] cases-indeed, it does not even require awareness of [the Court's]

cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). Therefore, we note that the Missouri Court of Appeals's failure to identify controlling Supreme Court precedent with regard to the confinement of insanity acquittees does not, by itself, render the decision contrary to clearly established federal law. See id.

## III.

### A.

We first address the respondent's contention that Revels's habeas petition was untimely because more than a year passed between the date that the judgment in Revels's initial criminal case became final, and the date Revels filed his petition. Revels responds that his habeas petition timely challenges the circuit court's 2003 judgment that, under Missouri law, he must remain in custody despite his request for release. Revels acknowledges that, at the time of the 1992 commitment order, he clearly met the criteria for confinement; however, he points out that the issue here is continued confinement, which he may challenge under Missouri law,[6] and that he no longer meets the constitutional criteria for commitment.

In this case, Revels is not challenging his conviction or initial commitment. Rather, he is challenging his continued commitment through his application for unconditional release, as Missouri law allows. See Mo. Rev. Stat. § 552.040.5, 13. Under AEDPA, "Congress established a 1-year statute of limitations for seeking

---

[6]"An order denying the application shall be without prejudice to the filing of another application after the expiration of one year from the denial of the last application." Mo. Rev. Stat. § 552.040.13. "[A]ny person who has been denied an application for a conditional release pursuant to subsection 13 of this section shall not be eligible to file for an unconditional release until the expiration of one year from such denial." Mo. Rev. Stat. § 552.040.5.

federal habeas corpus relief from a state-court judgment, 28 U.S.C. § 2244(d), and further provided that the limitations period is tolled while 'an application for State post-conviction or other collateral review' 'is pending.'" Lawrence v. Florida, 127 S. Ct. 1079, 1081 (2007) (quoting 28 U.S.C. § 2244(d)(2)). The circuit court denied Revels's application for unconditional release on June 21, 2004. Revels filed his notice of appeal with the Missouri Court of Appeals on September 1, 2004, and the court affirmed the denial of release on August 16, 2005. On October 4, 2005, the court of appeals denied Revels's application for transfer to the Missouri Supreme Court. Revels filed his habeas petition on November 15, 2005. Thus, 512 days passed from the circuit court's denial of Revels's application for release and his habeas petition. However, pursuant to 28 U.S.C. § 2244(d)(2), the habeas statute of limitations was tolled while Revels's claim was pending before the Missouri Court of Appeals. Thus, from September 1, 2004 to October 4, 2005, the statute of limitations was tolled. This means that 399 days are excluded from the 512-day period such that only 113 countable days passed from the circuit court's judgment to the filing of Revels's petition. Revels was allowed one year, see 28 U.S.C. § 2244(d)(1), and, therefore, the petition was timely filed.

B.

"[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Jones v. United States, 463 U.S. 354, 361 (1983) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). The Supreme Court outlined the substantive protections of the Due Process Clause for the continued confinement of insanity acquittees in Foucha v. Louisiana, 504 U.S. 71 (1992). The petitioner in Foucha challenged Louisiana's statutory release provision which provided that the state could continue to confine indefinitely an acquittee in a mental facility who, although not mentally ill, might be dangerous to himself or to others if released. Id. at 73. The Foucha Court held that the statute violated due process because such an "acquittee may be held as long as he is both mentally ill and

-11-

dangerous, but no longer." Id. at 77. Thus, an application for release of an insanity acquittee has two components: (a) a present mental illness and (b) dangerousness stemming from that illness. Id.; see United States v. Bilyk, 29 F.3d 459, 462 & 462 n.3 (8th Cir. 1994) (per curiam) (recognizing that future dangerousness alone is not a proper basis for the continued confinement of an insanity acquittee) (citing Foucha, 504 U.S. at 77-79); see also United States v. Wattleton, 296 F.3d 1184, 1202 n.35 (11th Cir. 2002) ("[T]he holding of Foucha provides that a defendant's dangerous propensities alone may not serve as a continued basis for confinement following an insanity verdict . . . ."); Parrish v. Colorado, 78 F.3d 1473, 1477 (10th Cir. 1996) ("[T]he real significance of the [Foucha] holding is that unless an acquittee has an identifiable mental condition, he cannot be held by the state merely because he is dangerous.").

Both the Missouri Supreme Court and the Missouri Court of Appeals have recognized Foucha's effect. See Greeno v. State, 59 S.W.3d 500, 503 (Mo. 2001) (en banc) ("A state may only confine someone found not guilty by reason of insanity if the confined person is both suffering from a mental disease or disorder and might be dangerous to himself or others if released.") (citing Foucha, 504 U.S. at 86); State v. Nash, 972 S.W.2d 479, 482 (Mo. Ct. App. 1998) ("The due process rights of a person are violated if the state holds a person in a psychiatric facility when the person is no longer suffering from a mental disease or defect.") (citing Foucha, 504 U.S. at 79-80). In Nash, the court of appeals found that the trial court erred where, after determining that Nash, an insanity acquittee, proved that he did not presently suffer from a mental illness, it then required him to also prove that he would not be dangerous in the reasonable future. 972 S.W.2d at 482-83 (citing Foucha, 504 U.S. at 77-79). The Nash Court went onto hold that "[o]nce the trial court found that [Nash] [did] not

presently have a mental disease or defect, the trial court was bound to release [Nash]." Id. at 482.[7]

However, in affirming the denial of Revels's application for unconditional release, the Missouri Court of Appeals stated:

> [I]t [is] not enough to prove present absence from mental defect, . . . the person seeking unconditional release must show that he is not likely to suffer from a mental disease or defect in the reasonable future, and also establish by clear and convincing evidence . . . that he will not be a danger to himself or others.

Revels, No. WD64433 at 3. Thus, the Missouri Court of Appeals expressly based its affirmance of the circuit court's denial of unconditional release on its finding that, under Missouri law, an insanity acquittee seeking release must show, by clear and convincing evidence, that (1) he is not presently mentally ill; (2) he is not dangerous; (3) he is not likely to suffer a mental disease; and (4) he is not likely to become dangerous in the reasonable future. Requiring an insanity acquittee to prove both a lack of present mental illness and dangerousness, is clearly contrary to Foucha, and violates the substantive protections of the Due Process Clause as defined by the

---

[7]We note that other Missouri Court of Appeals cases have reached contrary results. See State v. Gratts, 112 S.W.3d 12, 19-20 (Mo. Ct. App. 2003) (reversing circuit court judgment granting insanity acquittee an unconditional release because he demonstrated that he no longer suffered from a mental illness and remanding to the circuit court for it to determine whether he met his burden of establishing, by clear and convincing evidence, "that [he was] not in the reasonable future likely to have a mental disease or defect rendering him dangerous to the safety of himself or others"); State v. Weekly, 107 S.W.3d 340, 346-47 (Mo. Ct. App. 2003) (reversing circuit court judgment granting insanity acquittee an unconditional release because he demonstrated that he no longer suffered from a mental illness in light of the governing statute which required an additional "find[ing] that in the reasonable future [he] was not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others").

Supreme Court.  See 504 U.S. at 77.  Here, the Missouri Court of Appeals went even further, requiring Revels to also show the absence of a probability of a future mental illness and future dangerousness, stepping even further over the line drawn by the Supreme Court in Foucha.

The respondent contends that Foucha is inapplicable in two ways: (1) Foucha involved a conditional release such that the state of Louisiana continued to have some control over the acquittee in contrast to this case whereas here, if Revels is unconditionally released, the Missouri Department of Health would have no control over him and (2) in terms of procedure, in Foucha, only the state health department could initiate applications for release but, under the Missouri system, both the confined individual and the Missouri Department of Health can do so.

First, the State's attempt to distinguish this unconditional release case from Foucha, a conditional release case, is precluded by the Foucha Court's reasoning.[8] The Foucha Court stated that "according to the testimony given at the hearing in the trial court, Foucha is not suffering from a mental disease or illness.  If he is to be held, he should not be held as a mentally ill person."  504 U.S. at 79.  The Foucha Court went on to explain that

---

[8]However, Missouri courts have accepted the State's rationale.  See Weekly, 107 S.W.3d at 348-50 (distinguishing Foucha based on the differences between conditional and unconditional release such that the State could require an insanity acquittee seeking unconditional release to show both that he "(1) has no mental disease, *and* (2) in the reasonable future is not likely to have a mental disease rendering the applicant dangerous" without violating Foucha) (citing Foucha, 504 U.S. at 74, 82); see also State v. Revels, 13 S.W.3d 293, 296 (Mo. 2000) (en banc) (requiring an insanity acquittee seeking unconditional release to demonstrate that he lacks a present mental illness and that "in the reasonable future [he] is [not] likely to have, a mental disease or defect rendering the person dangerous to self or others . . . meets the holding of Foucha") (citing Foucha, 504 U.S. at 86-90); Gratts, 112 S.W.3d at 18 (noting the distinction between Foucha and unconditional release cases).

-14-

> A State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution . . . . Here, the State has no such punitive interest. As Foucha was not convicted, he may not be punished. Here, Louisiana has by reason of his acquittal exempted Foucha from criminal responsibility . . . .

Id. at 80. Thus, the rule urged by the respondent, that a state may continue to hold an insanity acquittee who seeks unconditional release even if he *is not* presently mentally ill, must be rejected. Rather, once an insanity acquittee has shown the absence of a present mental illness, his continued confinement constitutes "punishment," which Foucha expressly rejected as a proper basis for the confinement of one who is not criminally responsible for his criminal actions. Id. Moreover, the Supreme Court has recognized that "a federal court [may] grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (citing Williams, 529 U.S. at 407). Here, the distinction between conditional and unconditional release is not material in light of Foucha's "governing legal principle," constricting a state's ability to continue to confine an insanity acquittee.

Second, we see no reason for Foucha to be inapplicable simply because, pursuant to Missouri law, Revels can challenge his continued confinement whereas Foucha could not under the Louisiana procedure; Foucha sets forth the standard that must be satisfied regardless of who makes the application for release. In sum, this case is "materially indistinguishable" from Foucha. See Brown v. Payton, 544 U.S. 133, 141 (2005) ("A state-court decision is contrary to this Court's clearly established precedents . . . if it confronts a set of facts that is *materially indistinguishable* from a decision of this Court but reaches a different result.") (emphasis added).

The respondent next contends that, even if Foucha applies, the Missouri Court of Appeals did not violate Foucha because: (1) both the Jackson County Circuit Court and the Missouri Court of Appeals found that Revels had a present mental defect

-15-

whereas in <u>Foucha</u> the lower courts did not find a present mental disease or defect and (2) even assuming there was no finding of a present mental disease, a finding of a reasonable probability that a mental disease would reappear in the future combined with a finding of future dangerousness warrants continued confinement under <u>Foucha</u> because the potential for a future mental disease was not present or discussed in <u>Foucha</u>.

Whatever we think about the evidence concerning Revels's present mental state, the circuit court found that he suffered from a mental disorder. Were this the opinion we were reviewing, we would assume the correctness of the finding and only reverse if Revels presented clear and convincing evidence that this was not the case. <u>See</u> 28 U.S.C. § 2254(e)(1) (providing that, under AEDPA, federal habeas courts presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence). However, the circuit court's factual findings are not before us. Rather, under the certificate of appealability, our review is confined to the issue of whether the Missouri Court of Appeals unreasonably applied <u>Foucha</u> in determining that the state could continue to hold Revels based on future dangerousness alone. <u>See</u> 28 U.S.C. § 2253(c)(3); <u>see also</u> <u>Scott</u>, 473 F.3d at 1263; <u>Carter</u>, 151 F.3d at 874. We see no way to construe the court of appeals's assertion other than in direct contradiction of <u>Foucha</u>. Furthermore, the respondent's second contention, that the Missouri Court of Appeals did not violate <u>Foucha</u> due to the likelihood that Revels's mental illness would return, is plainly incorrect because <u>Foucha</u> required the finding of a *present* mental illness for the continued confinement of an insanity acquittee. 504 U.S. at 77; <u>see</u> <u>Wattleton</u>, 296 F.3d at 1199; <u>Parrish</u>, 78 F.3d at 1477; <u>Greeno</u>, 59 S.W.3d at 503; <u>Nash</u>, 972 S.W.2d at 482-83.

IV.

Because the Missouri Court of Appeals violated Revels's due process rights by applying a standard for unconditional release contrary to Supreme Court precedent,

-16-

we reverse the judgment of the district court and remand the case with instructions that the district court order that Revels be released from state custody unless the State of Missouri affords Revels a new hearing within a reasonable time as set by the district court.[9]

_____

---

[9]Below and before this court, Revels challenges the constitutionality of Chapter 552 of the Revised Statutes of the State of Missouri governing release; however, we, constrained by the certificate of appealability, cannot reach this issue. See Carter v. Hopkins, 151 F.3d 872, 874 (8th Cir. 1998) (rejecting petitioner's contention that this court's "review is not limited to those issues identified in the district court's certificate of appealability and that [it] [is] free to consider any and all issues so long as a certificate has been issued").